1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CASSANDRA JOHNSON,         )  Case No. CV 07-507 JC
               Plaintiff,  )
                        )  MEMORANDUM OPINION
       v.              )
                        )
MICHAEL J. ASTRUE,[1]    )
Commissioner of Social      )
Security,               )
           Defendant.  )

## I.    SUMMARY

On January 25, 2007, plaintiff Cassandra Johnson  ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits.  On October 1, 2007, the parties filed a  Joint Stipulation ("JS") setting forth their respective positions on plaintiff's claims.  On July 23, 2009, the matter was transferred and referred to the current Magistrate Judge.  The parties thereafter filed consents to proceed before the current Magistrate Judge.  On August 13, 2009, the matter was formally reassigned to the

---

[1]Michael J. Astrue is substituted as Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d)(1).

1  instant Court for final disposition.  The Court has taken this matter under

2  submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15.

3       Based on the record as a whole and the applicable law, the decision of the

4  Commissioner AFFIRMED.  The findings of the Administrative Law Judge

5  ("ALJ") are supported by substantial evidence and are free from material error.[2]

6  **II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

7  **DECISION**

8       **A.   Previously Adjudicated Applications**

9       On or about August 13, 2001, plaintiff previously filed applications for

10  Supplemental Security Income and Disability Insurance Benefits due to seizures

11  and hypertension.  (Administrative Record ("AR") 23, 59-61, 81-90, 158-60).  An

12  ALJ (the "prior ALJ") examined the medical record and heard testimony from

13  plaintiff on August 22, 2002.  (AR 166).

14       On November 8, 2002, the prior ALJ issued an unfavorable decision

15  denying benefits based upon the ALJ's conclusion that plaintiff was not disabled

16  at any time through the date of the decision (the "prior ALJ's decision").  (AR

17  170).  The prior ALJ found:  (1) plaintiff suffered from hypertension and a seizure

18  disorder (AR 169); (2) plaintiff's impairments or combination of impairments did

19  not meet or medically equal one of the listed impairments (AR 169); (3) plaintiff

20  had no exertional limitations, but her ability to work was limited by her need to

21  avoid heights, by her need to avoid operating a motor vehicle, and by her need to

22  avoid working around hazards in the workplace (AR 169); (4) plaintiff could

23  perform her past relevant work as a secretary/administrative assistant (AR 169-

24  70); and (5) plaintiff's allegations of "excess" symptoms and functional limitations

25

26  _____

27       [2]The harmless error rule applies to the review of administrative decisions regarding
    disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
28  (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
    Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
    application of harmless error standard in social security cases).

1  were not credible.  (AR 169).  Plaintiff did not appeal seek review of the prior

2  ALJ's decision.  (JS 2).

3          **B.     Applications In Issue**

4          On or about January 13, 2003, plaintiff filed subsequent applications for

5  Supplemental Security Income and Disability Insurance Benefits which are in

6  issue in the instant action.  (AR 181-84, 423-25).  Plaintiff asserted that she

7  became disabled in July 2001 due to seizures.   (AR 195-204).  The ALJ examined

8  the medical record and heard testimony from plaintiff (who was represented by

9  counsel), Rita Brown (the daughter of plaintiff's former guardian), and a

10  vocational expert on March 31, 2005.  (AR 441-67).

11          On June 24, 2005, the ALJ determined that plaintiff was not disabled at any

12  time from November 8, 2002 – the date the prior ALJ's decision became final –

13  through the date of the decision.  (AR 30).  Specifically, the ALJ found:

14  (1) the prior ALJ's decision was final and binding and created a presumption of

15  continuing non-disability (AR 29); (2) plaintiff had not overcome the presumption

16  of continuing non-disability (AR 29); (3) plaintiff suffered from hypertension and

17  a seizure disorder  (AR 29); (4) plaintiff's impairment or combination of

18  impairments did not meet or medically equal one of the listed impairments (AR

19  29); (5) plaintiff had no exertional limitations, but her ability to work was limited

20  by her need to avoid heights, by her need to avoid operating a motor vehicle, and

21  by her need to avoid working around hazards in the workplace (AR 30);

22  (6) plaintiff's allegations and testimony, Rita Brown's testimony, and the

23  statements of plaintiff's neighbor, Mary Burbank, regarding plaintiff's functional

24  limitations and "excess" symptoms were not entirely credible (AR 30).

25          The Appeals Council denied plaintiff's application for review.  (AR 9-11).

26  ///

27  ///

28  ///

1    **III.    APPLICABLE LEGAL STANDARDS**

2         **A.    Sequential Evaluation Process**

3         To qualify for disability benefits, a claimant must show that she is unable to

4    engage in any substantial gainful activity by reason of a medically determinable

5    physical or mental impairment which can be expected to result in death or which

6    has lasted or can be expected to last for a continuous period of at least twelve

7    months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

8    § 423(d)(1)(A)).  The impairment must render the claimant incapable of

9    performing the work she previously performed and incapable of performing any

10   other substantial gainful employment that exists in the national economy.  Tackett

11   v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

12        In assessing whether a claimant is disabled, an ALJ is to follow a five-step

13   sequential evaluation process:

14        (1)    Is the claimant presently engaged in substantial gainful activity?  If

15               so, the claimant is not disabled.  If not, proceed to step two.

16        (2)    Is the claimant's alleged impairment sufficiently severe to limit

17               her ability to work?  If not, the claimant is not disabled.  If so,

18               proceed to step three.

19        (3)    Does the claimant's impairment, or combination of

20               impairments, meet or equal an impairment listed in 20 C.F.R.

21               Part 404, Subpart P, Appendix 1?  If so, the claimant is

22               disabled.  If not, proceed to step four.

23        (4)    Does the claimant possess the residual functional capacity to

24               perform her past relevant work?[3]  If so, the claimant is not

25               disabled.  If not, proceed to step five.

26   ///

27   ────────────────────

28        [3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and
     represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a),
     416.945(a).

(5)     Does the claimant's residual functional capacity, when
considered with the claimant's age, education, and work
experience, allow her to adjust to other work that exists in
significant numbers in the national economy?  If so, the
claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679
(claimant carries initial burden of proving disability).

## B.     Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must
"'consider the record as a whole, weighing both evidence that supports and
evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
or reversing the ALJ's conclusion, a court may not substitute its judgment for that
of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

1

## C. Presumption Based Upon the Prior ALJ's Decision

2      Although the Commissioner may apply res judicata to bar reconsideration of

3  a disability claim with respect to a period during which the Commissioner has

4  already determined that a claimant is not disabled, the Commissioner's authority to

5  apply res judicata to a subsequent unadjudicated period is more limited.  Lester v.

6  Chater, 81 F.3d 821, 827 (9th Cir. 1995) as amended (1996).  A prior final

7  determination that a claimant is not disabled creates a presumption of continuing

8  non-disability with respect to any subsequent unadjudicated period of alleged

9  disability.  Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985); Lyle v. Secretary,

10  700 F.2d 566, 568 (9th Cir. 1983).  The claimant can, however, overcome this

11  burden by proving "changed circumstances," such as the existence of an

12  impairment not previously considered, an increase in the severity of an

13  impairment, or a change in the claimant's age category.  See Vasquez v. Astrue,

14  572 F.3d 586, 597 (9th Cir. 2009) (finding two changed circumstances  – new

15  allegation of mental impairment not raised in prior application or addressed in

16  prior denial and fact that claimant was approaching advanced age); Schneider v.

17  Commissioner, 223 F.3d 968, 973 (9th Cir. 2000) (finding changed circumstances

18  based on worse psychological test scores and diagnosis); Chavez v. Bowen, 844

19  F.2d 691, 693 (9th Cir. 1988) (attainment of advanced age constitutes changed

20  circumstance precluding application of res judicata to first administrate law

21  judge's ultimate finding against disability because advanced age often outcome-

22  determinative under Medical-Vocational grids); Light v. Social Security

23  Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (increased

24  severity of carpal tunnel syndrome and diagnosis of ADHD constitute changed

25  circumstances); Lester, 81 F.3d at 828 (finding two changed circumstances  – new

26  allegation of mental impairment not raised in prior application or addressed in

27  prior denial and fact that claimant was approaching advanced age); Gregory v.

28  Bowen, 844 F.2d 664, 666 (9th Cir. 1988) (res judicata could not be applied to bar

6

1  claim since claimant raised  psychological impairment not previously considered);

2  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989) (en banc) (attainment of

3  advanced age constitutes changed circumstance precluding application of res

4  judicata to first administrative law judge's ultimate finding against disability);

5  Taylor, 765 F.2d at 875 (finding claimant's condition improved rather than

6  deteriorated and claimant failed to show requisite changed circumstances); Booz

7  v. Secretary of Health & Human Services, 734 F.2d 1378, 1379-80 (9th Cir. 1984)

8  (finding no changed circumstance).[4]

9      Even when a claimant has demonstrated changed circumstances and thus

10  overcomes the presumption of continuing non-disability, a prior ALJ's findings

11  concerning the claimant's residual functional capacity, education, and work

12  experience or other findings required at a step in the sequential evaluation process

13

14  _____

15  [4]Social Security Acquiescence Ruling 97-4(9), 1997 WL 742758, generally applies to
cases involving a subsequent disability claim with an unadjudicated period arising under the
16  same title of the Social Security Act as a prior claim on which there has been a final
administrative decision that the claimant is not disabled.  It directs adjudicators of the subsequent
17  claim involving an unadjudicated period, to apply a presumption of continuing non-disability and
to determine that the claimant is not disabled with respect to that period unless the claimant
18  rebuts the presumption by showing a "changed circumstance" affecting the issue of disability
with respect to the unadjudicated period.  It also provides examples of "changed circumstances,"
19  which include an increase in the severity of the claimant's impairments, the alleged existence of
an impairment not previously considered, and a change in the criteria for determining disability.
20  Acquiescence Ruling 97-4(9) further instructs that if the claimant rebuts the presumption,
adjudicators must nonetheless give effect to certain findings contained in the final decision on the
21  prior claim, when adjudicating the subsequent claim.  Specifically, adjudicators must adopt a
finding of a claimant's residual functional capacity, education, work experience, or other findings
22  required at a step in the sequential evaluation process for determining disability, which was made
in the final decision on the prior disability claim with respect to the unadjudicated period unless
23  there is new and material evidence relating to such a finding or there has a been a change in the
law, regulations or rulings affecting the finding or the method of arriving at the finding.
24  Acquiescence Rulings are generally binding on all components of the Social Security
Administration.  20 C.F.R. § 402.35 (b)(2).  Courts generally defer to Social Security Rulings
25  which are binding on the Social Security Administration unless they are plainly erroneous or
inconsistent with the Social Security Act or regulations.  Holohan v. Massanari, 246 F.3d 1195,
26  1202 n.1 (9th Cir. 2001); Paxton v. Secretary of Health & Human Services, 856 F.2d 1352, 1356
(9th Cir. 1988).

27

28

1  for determining disability, are still entitled to some res judicata consideration in

2  subsequent proceedings.  Chavez, 844 F.2d at 693 (rejecting Commissioner's

3  assertion that res judicata should not apply to first ALJ's finding that claimant was

4  unable to perform past work in absence of showing that alleged "new and

5  material" evidence was in fact "new" and not previously presented to first ALJ;

6  holding that because second ALJ failed, *inter alia*, to afford preclusive effect to

7  prior ALJ's determinations that claimant had residual functional capacity of light

8  work, was of limited education, and was skilled or semi-skilled, second ALJ's

9  decision was not supported by substantial evidence); Social Security Acquiescence

10  Ruling 97-4(9), 1997 WL 742758 (if claimant rebuts presumption of continuing

11  nondisability, adjudicators must adopt prior findings of residual functional

12  capacity, education, work experience, or other findings required at a step in the

13  sequential evaluation process for determining disability, unless there is new and

14  material evidence relating to such finding or there has been change in law,

15  regulations or rulings affecting finding or method of arriving at the finding).

16  **IV.   SUMMARY OF PERTINENT MEDICAL EVIDENCE**

17       **A.   Martin Luther King/Drew Medical Center Records**

18       Between at least July 22, 1999 to March 24, 2005, plaintiff was seen and

19  treated at the Martin Luther King/Drew Medical Center ("MLK Medical Center"

20  or "MLK").  (AR 123-35, 261-303, 338-421).  Among other physicians, plaintiff

21  was seen by neurologist, Dr. Lowell Nelson.  (AR 167-68, 270-71, 277-78, 284-

22  85, 390-91, 394-95, 402-04).

23       Dr. Nelson's February 13, 2002 report reflects:  Plaintiff reported that she

24  began to have seizures in the "early 90s" for unknown reasons.  (AR 284).  She

25  thought she had an average of two seizures per month.  (AR 284).  Plaintiff was

26  alert, oriented, attentive and briskly responsive.  (AR 285).  It was Dr. Nelson's

27  impression that plaintiff had probable secondarily generalized seizures of

28  ///

1  undetermined etiology at quite a high frequency (twice a month) despite
2  medication.

3      Dr. Nelson's July 23, 2002 report reflects:   Plaintiff reportedly had had
4  seizures about once or twice monthly since her last visit – mostly small spells with
5  drooling from her mouth; one generalized convulsion in May. (AR 277).  She had
6  missed a dose of medication a few days before her convulsion in May, and
7  reported having been under a lot of stress. (AR 277).  Plaintiff indicated that her
8  encounters with her psychiatrist were stressful. (AR 277).  There was no change
9  in plaintiff's condition since her last visit in February. (AR 277).  It was Dr.
10  Nelson's impression that plaintiff had incomplete seizure control. (AR 277).

11      Dr. Nelson's December 3, 2002 report reflects:   Plaintiff had reportedly
12  been under a high level degree of stress due to the unexpected death of an uncle,
13  difficulty returning to work given her age and uncontrolled seizures, and the
14  possibility of eviction from her home of twenty years. (AR 270).  She reported
15  that she was having seizures twice a month despite medication. (AR 270).  She
16  also reported having had some problems with depression, but noted that she was
17  menopausal, in addition to the various emotional stresses in her life. (AR 270).

18      Dr. Nelson's December 3, 2002 report reflects:  There was no change in
19  plaintiff's condition. (AR 270).  She was alert and normally responsive, but
20  appeared depressed and near to weeping at times. (AR 271).  It was Dr Nelson's
21  impression that plaintiff still had unsatisfactory seizure control with moderate
22  levels of medication. (AR 271).  He prescribed an increased dose of a specified
23  medication on a trial basis. (AR 271).

24      Dr. Nelson's April 8, 2003 report reflects:   Plaintiff reportedly had had a
25  convulsion in February. (AR 267).  She further reported that in March, during a
26  one week visit, her son had told her that she had had three recurrent seizures in her
27  sleep on one night, but none on the remaining nights of the week. (AR 267).  She
28  reportedly had been unable to find a job, and had had a job interview that day,

1   which she interrupted to come to the clinic.  (AR 267).  There was no change in

2   plaintiff's condition.  (AR 267).  She was nervous and somewhat irritable and

3   frustrated that her seizures remained uncontrolled.  She spent some time weeping

4   during the interview.  (AR 267).  It was Dr Nelson's  impression that plaintiff had

5   incomplete seizure control.  (AR 268).  He further noted that she had had no

6   adverse effects from a specified medication and might tolerate an increase in dose,

7   which he prescribed.  (AR 268).

8         Dr. Nelson's August 26, 2003 report reflects:   Since her last visit, plaintiff

9   reportedly had had one small seizure at home in June, and what she assumed to be

10  a seizure the previous day while riding a bus to a job interview.  (AR 402).  She

11  reportedly found herself on the street, off the bus, and disoriented; when she

12  recovered her orientation she found herself about 10 miles from her intended

13  destination.  (AR 402).  Plaintiff indicated that she was excessively sleepy, enough

14  to significantly interfere with her normal functions.  (AR 402).  She stated: "If

15  someone found it in her heart to hire me, I don't think I could do the job because if

16  I sit still for half an hour I fall asleep. . . I'm going out of my damned mind.  I

17  don't know where to go or what to do. . . I can't find a job. . . ."  (AR 402).

18  Plaintiff reported that she had been looking for a job for the last year and a half

19  and that she had applied for a part time job but did not get it because, she was told,

20  they wanted someone who was bilingual.  (AR 402).  Plaintiff was tearful, angry,

21  and frustrated with her life, which had largely been destroyed by unemployment

22  resulting from seizures.  (AR 402).  It was Dr. Nelson's impression that plaintiff

23  still had incomplete seizure control, that the somnolence was probably a

24  medication side effect which substantially interfered with her function, but that it

25  did not appear that she could reduce her medications to address the issue of

26  somnolence.

27  ///

28  ///

10

1    A November 3, 2003 report generated by the MLK Emergency Department

2  reflects that plaintiff reported having had a seizure the prior night while sleeping

3  and that her last seizure had occurred in July 2003.  (AR 399).

4    On December 9, 2003, plaintiff again visited Dr. Nelson.  (AR 394).  Dr.

5  Nelson noted that plaintiff was angry and irritable, but that she communicated

6  quite clearly and rationally, and related well to the interview.  (AR 394).  He found

7  that plaintiff had grossly normal spontaneous movements and normal associated

8  movements.  (AR 394).  Dr. Nelson determined that there was unsatisfactory

9  seizure control.  (AR 395).  He also noted that plaintiff was markedly non-

10  compliant, with self adjustment of medications to essentially zero medications,

11  associated with generalized convulsion.  (AR 395).

12    On April 14, 2004, plaintiff again visited Dr. Nelson.  (AR 390).  Dr.

13  Nelson's report reflects that although plaintiff remembered "no paroxymsal

14  activity," it appeared, based upon reports from her family, that they happened

15  about two or three times per month.  (AR 390).  Plaintiff had yet to take her

16  medication that day.  (AR 390).  Dr. Nelson concluded that plaintiff experienced

17  possible complex partial seizures, but no convulsions with her current dose of

18  medication.  (AR 391).  Treatment notes for the same date reflect that plaintiff was

19  alert and oriented and denied having had any seizures since her last visit.  (AR

20  392).

21    MLK Medical Center treatment notes dated May 11, 2004, reflect that

22  plaintiff was non-compliant with her medications.  (AR 370).

23    MLK Medical Center Neuroscience Outpatient Clinic treatment notes dated

24  December 1, 2004, reflect that plaintiff reported last having a seizure on

25  November 24, 2004 during her sleep, and that she had previously had a seizure in

26  May 2004.  (AR 341).

27  ///

28  ///

1
2

**B.      Hubert H. Humphrey Comprehensive Health Center Medical Evidence**

3
4
5
6
7
8
9

Between at least August 27, 2001 and March 17, 2003, plaintiff was seen and treated by multiple different medical practitioners at the Hubert H. Humphrey Comprehensive Health Center ("HHH Health Center" or "HHH") in Los Angeles. (AR 231-60).   Treatment notes dated June 11, 2002, reflect that plaintiff admitted to anxiety problems and was going to see a psychiatrist.  (AR 246).  Treatment notes dated September 24, 2002, reflect that plaintiff's anxiety was being followed by a psychiatrist.  (AR 242).

10

**C.      Treating Psychologist/Psychiatrist – Dr.  Ferrara-Guthrie**

11
12
13
14
15
16
17
18
19
20

Between May 10, 2002 and at least March 2005, plaintiff was seen by treating psychologist/psychiatrist Dr. Ferrara-Guthrie of the August Hawkins Mental Health Clinic.  (AR 154-55, 330, 422).  Plaintiff was initially seen "for depression associated with her medical condition, seizure disorder, and the consequent inability to find employment."  (AR 330).  Plaintiff reported "interrupted sleep, anxiety, feeling hopeless & helpless and [being] unable to be entirely independent.  (AR 330).  Dr. Ferrara-Guthrie noted that plaintiff's lack of employment had "caused a number of insurmountable hurdles, beginning with inability to pay for housing & possibly becoming homeless and more hopeless and helpless."  (AR 330).

21
22
23
24
25

On August 26, 2002, Dr. Ferrara-Guthrie completed a "Physician's Supplementary Certificate" which reflects:  Her primary diagnosis was that plaintiff suffered from a mood disorder to due to a medical condition.[5]  (AR 155). Plaintiff had a seizure disorder which impaired her ability to function at work, causing depression and memory loss.  (AR 155).  Plaintiff's continued seizures

26
27
28

---

[5]In the space calling for the primary diagnosis, Dr. Ferrara-Guthrie inserted the code 293.83 which is the code corresponding to a diagnosis of "Mood Disorder Due to Medical Condition" in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (4th ed. 2000).

12

1    rendered her unable to obtain employment.  (AR 155).  She was unable to function

2    independently for lack of funds due to unemployment and emotional stress.   (AR

3    155).

4         On October 30, 2003, Dr. Ferrara-Guthrie generated a handwritten letter in

5    which she noted the following:  She had seen plaintiff approximately eleven times.

6    (AR 330).  Plaintiff's situation had not improved.  (AR 330).  Plaintiff reportedly

7    had an "acute outburst" on October 2, 2003, while being interviewed at the Social

8    Security Office, during which she cried, screamed and stated that she could not

9    "keep on like this."  (AR 330).  Dr. Ferrara-Guthrie diagnosed plaintiff with

10   depression not otherwise specified vs. depression secondary to general medical

11   condition (seizure disorder).  (AR 330).

12        On March 22, 2005, Dr. Ferrara-Guthrie generated another handwritten

13   letter in which she noted the following:  Plaintiff's condition had not changed

14   since October 2003.  (AR 422).  She had become more hopeless given her inability

15   to find work and therefore to support herself due to her continued medical

16   debilitating condition:  seizure disorder.  (AR 422).  Plaintiff's current psychiatric

17   diagnosis was depression not otherwise specified, ruling in a depression due to

18   seizure disorder.  (AR 422).  Plaintiff would be unable to find employment due to

19   her disabling neurological condition and therefore needed financial support for her

20   sustenance.  (AR 422).

21        **D.    Consultative Examiner – Dr. Nguyen**

22        On June 13, 2003, plaintiff underwent a complete psychiatric evaluation by

23   consultative examiner, Dr. Nguyen, of the East West Medical Group.  (AR 304-

24   07).  Dr. Nguyen's report reflects:   Plaintiff had no history of psychiatric

25   hospitalization or outpatient treatment, and was not seeing a psychiatrist at the

26   time.  (AR 304).  Her speech was normal, spontaneous, goal-directed and

27   articulate.  (AR 305).  Plaintiff did not show any abnormal, bizarre or psychotic

28   behavior, and was cooperative.  (AR 305).  Plaintiff's affect was unremarkable,

1    and she had no suicidal or homicidal ideation.  (AR 305).  Plaintiff had no

2    looseness of association and no paranoid ideation, delusions, auditory or visual

3    hallucinations.  (AR 306).  Plaintiff was oriented times four and was able to recall

4    three out of three objects immediately and after five minutes.  (AR 306).  She was

5    able to recall 7 digits going forward and 4 digits going backwards.  (AR 306).  She

6    could do simple math, was able to name the current and recent past Presidents, and

7    gave appropriate responses to questions regarding the similarities between two

8    objects and what to do in an emergency.  (AR 306).  There was no evidence of a

9    psychiatric disorder and no evidence of any particular psychiatric diagnosis at the

10   time.  (AR 306).  Plaintiff's mental status examination was unremarkable.  (AR

11   306).  She could focus and maintain attention, and could understand, remember

12   and follow instructions.  (AR 306).  She was competent to manage her own funds.

13   (AR 306).

14          **E.      State Agency Physician – Dr. Kalmar**

15          On June 23, 2003, State Agency Physician Dr. Kalmar completed a Physical

16   Residual Functional Capacity Assessment in which such doctor opined:   Plaintiff

17   had no exertional, postural, manipulative, visual, or communicative limitations.

18   (AR 309-13).  Although she should avoid concentrated exposure to hazards

19   (machinery, heights, etc.), she had no other environmental limitations.  (AR 313).

20   **V.    DISCUSSION**

21          **A.      The ALJ's Assessment of the Opinions of Plaintiff's Treating**

22                   **Psychologist/Psychiatrist**

23          Plaintiff contends that the ALJ erroneously failed to give appropriate weight

24   to the opinion of her treating psychologist/psychiatrist, Dr. Ferrara-Guthrie.  (JS

25   3).  This Court finds no material error in the ALJ's assessment of this medical

26   opinion.

27   ///

28   ///

14

### 1.      Applicable Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester, 81 F.3d at 830 (footnote omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[6]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on

---

[6]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1   substantial evidence in the record.  Id.  (citation and internal quotations omitted);
2   Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by
3   setting out detailed and thorough summary of facts and conflicting clinical
4   evidence, stating his interpretation thereof, and making findings) (citations and
5   quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite
6   "magic words" to  reject a treating physician opinion – court may draw specific
7   and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer
8   his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He
9   must set forth his own interpretations and explain why they, rather than the
10  [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the
11  treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,
12  602 (9th Cir. 1989).

13                    **2.      The ALJ's Assessment of Dr. Ferrara-Guthrie's Opinions**
14          In the ALJ's decision, the ALJ expressly addressed the opinions of Dr.
15  Ferrara-Guthrie, noting that such doctor had opined that plaintiff was disabled as a
16  result of a seizure disorder and a nonspecific depressive disorder.  (AR 27).  The
17  ALJ affirmatively rejected Dr. Ferrara-Guthrie's opinion and gave it no weight
18  assertedly because (1) the opinion was unsupported by treatment notes; (2) a
19  finding of  disability is a legal determination reserved for the ALJ – Dr. Ferrara-
20  Guthrie was only qualified to give an opinion about plaintiff's functional abilities;
21  and (3) the opinion was completely contradicted by the findings of Dr. Nguyen
22  and Dr. Kalmar.   (AR 27) (citing Exhibits B-3F [AR 304-07] and B-5F [AR 309-
23  16]).

24                    **3.      Analysis**
25          As a threshold matter, this Court declines to apply, and finds that the ALJ
26  erred in applying, the presumption of continuing non-disability to the
27  unadjudicated period post-dating the prior ALJ's decision because plaintiff turned
28  50 after the date of the prior ALJ's decision and thus entered the "closely

approaching advanced age" category as defined by the applicable regulations.  See Vasquez v. Astrue, 572 F.3d at 597-98 (fact that claimant turned 50 after date of earlier decision and thus entered the "closely approaching advanced age" category was a changed circumstance precluding application of presumption of continuing non-disability); Lester, 81 F.3d at 828 (same).[7]  This Court nonetheless finds that the ALJ did not materially err in rejecting Dr. Ferrara-Guthrie's opinion because such rejection is supported by findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.

As noted above, the ALJ cited three reasons for rejecting Dr. Ferrara-Guthrie's opinion:  (1) her opinion was unsupported by treatment notes; (2) her opinion that plaintiff was disabled was a legal opinion reserved for the ALJ; and (3) her opinion was contradicted by Drs. Nguyen and Kalmar.[8]  As to the first

---

[7]However, to the extent plaintiff intends to contest that res judicata applied to the period covered by the prior ALJ's decision, she is mistaken.  The Commissioner may, as the Commissioner did here, apply res judicata to bar reconsideration of a period with respect to which the Commissioner has already made a determination, by declining to reopen the prior application.  Lester, 81 F.3d at 827.  As a general matter subject to an exception not applicable here, the Commissioner's refusal to reopen the Commissioner's decision as to the previously adjudicated period is not subject to review.  Id.  The Court further notes that it rejects plaintiff's suggestion that the mere presence of new medical evidence in the record would preclude application of the presumption of continuing non-disability.  (JS 10-11).  While the records in issue may be "new," plaintiff fails to identify what contained within the records is "material" or constitutes a "changed circumstance."  Accordingly, but for the fact that plaintiff had entered the "closely approaching advanced age" category since the issuance of the prior ALJ's decision, this Court would apply the presumption of continuing non-disability to the period post-dating the prior ALJ's decision.

[8]Defendant suggests that the ALJ also rejected Dr. Ferarra-Guthrie's opinion because of gaps in plaintiff's medical treatment.  (JS 8).  However, although the ALJ discussed plaintiff's gaps in medical treatment in the paragraph immediately following the ALJ's discussion of Dr. Ferrara-Guthrie's opinion, it does not appear to this Court that such was a basis upon which the ALJ rejected Dr. Ferrara-Guthrie's opinion.  The Court makes this assessment because the ALJ devoted a single paragraph to discussing Dr. Ferrara-Guthrie's opinion and ended such paragraph with the sentence "For these reasons, the Administrative Law Judge does not give any weight to this opinion."  (AR 27).  Accordingly, this Court does not address, in this section, the parties' respective contentions regarding the gaps in plaintiff's medical treatment.

1  reason, plaintiff argues that Dr. Ferrara-Guthrie's opinion is supported by

2  treatment notes from *another*, unaffiliated treating physician, Dr. Nelson.  (JS 3).

3  Even assuming this to be true, it misses the point.  A treating doctor's opinion

4  about the severity of the claimant's impairments can properly be discounted if the

5  opinion is unsupported by the doctor's *own* treatment notes.  See Connett v.

6  Barnhart, 340 F.3d 871, 875 (9th Cir. 2003); see also Saelee v. Chater, 94 F.3d

7  520, 522 (9th Cir. 1996) (variance between physician's opinion and his own

8  treatment notes may be used to deem opinion untrustworthy), cert. denied, 519

9  U.S. 1113 (1997).[9]

10      Although plaintiff does not address the second reason articulated by the

11  ALJ, this Court notes that the ALJ was not bound by the Dr. Ferrara-Guthrie's

12  opinion on the ultimate issue of disability.  See 20 C.F.R. §§ 404.1527(e)(1),

13  416.927(e)(1); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).  The

14  ALJ was nonetheless required to provide specific and legitimate reasons to reject

15  such opinion.  Tommasetti, 533 F.3d at 1041.  As discussed herein, the ALJ did

16  so.

17      As to the third reason articulated by the ALJ to reject Dr. Ferrara-Guthrie's

18  opinion – the fact that it was contradicted by the opinions of Drs. Nguyen and

19  Kalmar – plaintiff contends that such opinions do not constitute substantial

20  evidence and were erroneously relied upon by the ALJ.  However, Dr. Nguyen

21  personally examined plaintiff, administered objective tests, and made independent

22  clinical findings.  When an examining physician provides independent clinical

23

24  _____

25  [9]Plaintiff, citing Montijo v. Secretary of Health and Human Services, 729 F.2d 599, 601
(9th Cir. 1984), argues that a physician's inability to support his findings with objective support

26  is not a clear and convincing reason to reject his opinion.  However, even assuming that the
absence of supporting treatment notes is legally equivalent to the absence of supporting objective

27  medical evidence, this case is distinguishable from Montijo because Dr. Ferrara-Guthrie's
opinion is contradicted by other medical opinions in the record.  See Andrews v. Shalala, 53 F.3d

28  1035, 1041-42 (9th Cir. 1995) (distinguishing Montijo because in that case, the medical opinions
in issue were uncontroverted).

18

1  findings that differ from the findings of a treating physician, such examiner's

2  findings themselves constitute substantial evidence.  Orn, 495 F.3d at 632.  Here,

3  Dr. Nguyen's opinion was buttressed by that of Dr. Kalmar.  Although plaintiff

4  points out that Dr. Nguyen did not review plaintiff's medical records and that the

5  Dr. Kalmar did not examine plaintiff – facts which were certainly appropriate for

6  the ALJ to consider in assessing the weight to give to such opinions – the ALJ is

7  responsible for resolving conflicts in medical testimony.  Magallanes, 881 F.2d at

8  750.

9       As the ALJ in this case rejected Dr. Ferrara-Guthrie's opinions by setting

10  forth specific, legitimate reasons for doing so that are based on substantial

11  evidence in the record, plaintiff is not entitled to a reversal or remand based upon

12  the instant claim.

13       **B.     The ALJ's Determination That Plaintiff Did Not Suffer from a**

14              **Severe Mental Impairment**

15       Plaintiff argues that the ALJ erred in failing to find that plaintiff suffered

16  from a severe mental impairment.  (JS 11).  Defendant disagrees.  This Court finds

17  that the ALJ's determination that plaintiff did not suffer from a severe mental

18  impairment is supported by substantial evidence and is free from material error.

19       **1.     Applicable Law**

20       As noted above, plaintiff has the burden of proving that she has a severe

21  impairment at step two of the sequential evaluation process.  An impairment is

22  severe if it significantly limits one's ability to perform basic work activities.  20

23  C.F.R. §§ 404.1520(c), 416.920(c).  An impairment is "non-severe" if it does not

24  significantly limit one's physical or mental ability to do basic work activities.  20

25  C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are the "abilities and

26  aptitudes necessary to do most jobs," such as (1) physical functions like walking,

27  standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the

28  capacity for seeing, hearing, and speaking; (3) understanding, carrying out, and

1   remembering simple instructions; (4) the use of judgment; (5) responding

2   appropriately to supervision, co-workers, and usual work situations; and

3   (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b),

4   416.921(b).

5         Step two is "a de minimis screening device [used] to dispose of groundless

6   claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  An ALJ may find

7   that a claimant lacks a medically severe impairment or combination of

8   impairments only when this conclusion is clearly established by medical evidence.

9   Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted).  Applying

10  the normal standard of review to the requirements of step two, a court must

11  determine whether an ALJ had substantial evidence to find that the medical

12  evidence clearly established that the claimant did not have a medically severe

13  impairment or combination of impairments.  Webb, 433 F.3d at 687; see also

14  Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference

15  usually accorded to the Secretary's application of regulations, numerous appellate

16  courts have imposed a narrow construction upon the severity regulations applied

17  here.").

18        **2.    The ALJ's Decision Regarding Plaintiff's Alleged Mental**

19                    **Impairment**

20        The ALJ determined that the medical record did not support a finding that

21  plaintiff had any significant limitations in her mental functioning abilities.  (AR

22  26).  The ALJ noted that plaintiff had never required psychiatric hospitalization

23  and that when plaintiff was evaluated by the consultative psychiatric examiner, she

24  did not show any bizarre or psychotic behavior.  (AR 26).  Instead, her speech was

25  normal, spontaneous, and goal-directed.  (AR 27).  She had no suicidal or

26  homicidal ideation.  (AR 27).  Her psychomotor activity was within normal limits.

27  (AR 27).  She had no looseness of association, paranoid ideation, delusions or

28  auditory/visual hallucinations.  (AR 27).  The ALJ noted that the consultative

1  examiner had concluded that plaintiff had no evidence of a psychiatric disorder

2  and had opined that plaintiff was able to focus and maintain attention as well as

3  understand, remember, and follow instructions.  (AR 27) (citing Exhibit B-3F [AR

4  304-07 – Dr. Nguyen's report]).  The ALJ pointed to multiple treatment notes

5  between December 2002 and February 2005 which reflect that plaintiff was alert

6  and oriented.  (AR 28) (citing Exhibit B-2F at 4, 10 [AR 264, 270 – MLK

7  records], Exhibit B-1F at 7 [AR 237 – HHH records], Exhibit B-9F at 3, 21, 55,

8  59, 60, 68 [AR 341, 359, 392, 396, 397, 405 – MLK records] and Exhibit B-10F at

9  4 [AR 420 – MLK records].  The ALJ also considered and rejected Dr. Ferrara-

10  Guthrie's opinion regarding plaintiff's alleged mental impairment for the reasons

11  discussed above.  (AR 27).

12              **3.    Analysis**

13          Plaintiff contends that medical evidence from three sources demonstrates

14  that she had a severe mental impairment:  (1) HHH records in June 2002 and

15  September 2002 which reflect that she had an anxiety problem and was referred to

16  a psychiatrist; (2) MLK records in April 2003 and August 2003 which reflect that

17  she was nervous, somewhat irritable, weeping, tearful, angry, and frustrated with

18  her life; and (3) Dr. Ferrara-Guthrie's diagnosis that plaintiff had depression, not

19  otherwise specified due to her uncontrolled seizure disorder, and had symptoms of

20  hopelessness and helplessness.

21          First, to the extent plaintiff's position is predicated upon Dr. Ferrara-

22  Guthrie's opinion, plaintiff fails to meet her burden to demonstrate that she

23  suffered from a severe mental impairment because, as discussed above, the ALJ

24  properly rejected such opinion.

25          Second, even including and crediting Dr. Ferrara-Guthrie's opinion,

26  plaintiff still fails to meet her burden to demonstrate that she suffered from a

27  ////

28  ///

1   severe mental impairment – *i.e.*, an impairment that significantly limited her

2   ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).[10]

3         Third, substantial evidence in the form of Dr. Nguyen's opinion, clearly

4   supports the ALJ's determination that plaintiff did not suffer from a severe

5   impairment.[11]  The record also supports the ALJ's reliance on the remaining

6   medical evidence cited in support of the ALJ's conclusion that plaintiff did not

7   suffer from a severe mental impairment.

8         As plaintiff has failed to meet her burden to demonstrate that plaintiff

9   suffered from a severe mental impairment and as the ALJ's determination that

10   plaintiff did not suffer from a severe mental impairment is supported by

11   substantial evidence and is free from material error, plaintiff is not entitled to a

12   reversal or remand on this claim.

13         **C.     The ALJ's Assessment of Plaintiff's Credibility**

14         Plaintiff asserts that the ALJ failed properly to evaluate plaintiff's

15   subjective symptoms and credibility.  Defendant disagrees.  This Court finds that

16   the ALJ's assessment of plaintiff's subjective symptoms and credibility is

17   supported by substantial evidence and is free from material error.

18         **1.     Applicable Law**

19         Questions of credibility and resolutions of conflicts in the testimony are

20   functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th

21   Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable

22   and is supported by substantial evidence, it is not the court's role to "second-

23   guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

24

25
          _____

26   [10]The record contains a report of a May 21, 2003 contact with plaintiff which reflects:
     "[Plaintiff] admits that she has no mental restrictions from work or function[.]"

27   [11]For the reasons discussed in Part VA3, this Court rejects plaintiff's contention that the

28   opinion of Dr. Nguyen does not constitute substantial evidence.

1    An ALJ is not required to believe every allegation of disabling pain or other

2  non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d

3  597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically

4  determinable impairment that could reasonably give rise to symptoms assertedly

5  suffered by a claimant, an ALJ must make a finding as to the credibility of the

6  claimant's statements about the symptoms and their functional effect.  Robbins,

7  466 F.3d 880 at 883 (citations omitted).  Where the record includes objective

8  medical evidence that the claimant suffers from an impairment that could

9  reasonably produce the symptoms of which the claimant complains, an adverse

10  credibility finding must be based on clear and convincing reasons.  Carmickle v.

11  Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir.

12  2008) (citations omitted).  The only time this standard does not apply is when

13  there is affirmative evidence of malingering.  Id.  The ALJ's credibility findings

14  "must be sufficiently specific to allow a reviewing court to conclude the ALJ

15  rejected the claimant's testimony on permissible grounds and did not arbitrarily

16  discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th

17  Cir. 2004).

18    To find the claimant not credible, an ALJ must rely either on reasons

19  unrelated to the subjective testimony (e.g., reputation for dishonesty), internal

20  contradictions in the testimony, or conflicts between the claimant's testimony and

21  the claimant's conduct (e.g., daily activities, work record, unexplained or

22  inadequately explained failure to seek treatment or to follow prescribed course of

23  treatment).  Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at

24  680-81; SSR 96-7p.  Although an ALJ may not disregard a claimant's testimony

25  solely because it is not substantiated affirmatively by objective medical

26  evidence, the lack of medical evidence is a factor that the ALJ can consider in his

27  credibility assessment.  Burch, 400 F.3d at 681.

28  ///

1                **2.**     **Analysis**

2        First, for the reasons discussed in Part VA3, above, this Court rejects

3 defendant's assertion that the ALJ's decision should be affirmed based upon a

4 presumption of continuing non-disability.

5        Second, however, the Court nonetheless affirms the ALJ's determination

6 regarding plaintiff's credibility because the ALJ provided clear and convincing

7 reasons which are supported by substantial evidence in the record. The ALJ

8 rejected plaintiff's allegations and testimony regarding "excess" symptoms and

9 functional limitations because plaintiff assertions were (1) contradicted by

10 treatment notes (as detailed by the ALJ with multiple citations to the record); and

11 (2) contradicted by plaintiff's conduct in multiple respects, *e.g.*, her non-

12 compliance with a prescribed course of treatment, her failure to seek continuous

13 treatment, her active seeking of employment (again, as detailed by the ALJ with

14 multiple citations to the record). (AR 27-29). These are appropriate bases upon

15 which to reject a claimant's credibility. <u>See</u> <u>Orn</u>, 495 F.3d at 636 (Factors that

16 ALJ may consider in weighing claimant's credibility include inconsistency

17 between testimony and conduct, and unexplained or inadequately explained failure

18 to seek treatment or follow prescribed course of treatment). Plaintiff correctly

19 notes that the failure to seek treatment where a plaintiff cannot afford to seek it is

20 not an appropriate basis upon which to discount a claimant's credibility. (JS 17).

21 However, the only evidence cited by plaintiff for her current assertion that she did

22 not seek treatment because she could not afford it, is an at best ambiguous

23 statement by Rita Brown – a witness whose credibility the ALJ rejected in a

24 finding that is not challenged here. (JS 17). Plaintiff points to no testimony or

25 statements of her own in the record which suggest that she refrained from seeking

26 treatment or failed to take her prescribed medication for financial reasons or other

27 adequately explained reasons.

28 ///

1   In short, plaintiff is not entitled to reversal or remand on this claim because

2   the ALJ's articulated reasons for rejecting her allegations are clear and convincing

3   and are supported by substantial evidence in the record.

4   **VI.    CONCLUSION**

5   For the foregoing reasons, the decision of the Commissioner of Social

6   Security is affirmed.

7   LET JUDGMENT BE ENTERED ACCORDINGLY.

8   DATED:   August 19, 2009

9                                                      /s/

10                                          Honorable Jacqueline Chooljian
                                            UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28